UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DEBBI CARRASCO,

       Plaintiff,

v.

SPECTRUM HEALTH HOSPITALS,

       Defendant.
_____/

Case No.  1:06-CV-781

HON. ROBERT J. JONKER

## OPINION

### INTRODUCTION

Plaintiff Debbi Carrasco brings this action against her former employer, Defendant Spectrum Health Hospitals, alleging that Defendant discriminated against her because of her disability; retaliated against her because she was eligible to use, and did in fact use, leave provided by the Family Medical Leave Act (FMLA); and wrongfully discharged her without sufficient cause. Defendant moved for summary judgment under FED. R. CIV. P. 56.

### FACTS

A defense motion for summary judgment requires the Court to assess the facts in the light most favorable to the plaintiff and to draw all reasonable inferences in favor of the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following statement of facts does so.

Plaintiff has Irritable Bowel Syndrome (IBS), which causes her to have frequent and sometimes uncontrollable bowel movements. (Pl.'s Dep. 108.) It affects her ability to lift heavy things without losing control of her bowels, and it requires her to remain close to a bathroom in case

she has an uncontrollable bowel movement. (*Id.* at 109–10.) As a result of her IBS, Plaintiff needs to be able to use the restroom whenever she has the urge. (*Id.* at 109.)

Plaintiff worked for almost twenty-eight years as a radiology scheduler for Defendant Spectrum Health Hospitals or its predecessor. (Pl.'s Dep. 22.) Plaintiff was sometimes tardy or absent from work because of her IBS. In late 2003 a coworker suggested that Plaintiff apply for intermittent FMLA leave to excuse her IBS-related absences. (Pl.'s Dep. at 52.) Plaintiff asked her supervisor, Jim Clemens, about the availability of intermittent FMLA leave, and Plaintiff eventually obtained certification of her eligibility for intermittent FMLA leave. (*Id.* at 23, 52–53.) Despite Defendant's certification of Plaintiff's eligibility for FMLA leave, however, Mr. Clemens and others made light of Plaintiff's IBS by joking when she was absent that she was probably "at home on the commode." (Newton's Dep. 8–10.) Mr. Clemens also frequently commented to other employees that Plaintiff's absences were more likely caused by alcohol abuse than IBS. *Id.*

In March, 2004, Plaintiff received a corrective action for falling asleep at work. (Pl.'s Dep. at 23.) Plaintiff then received another corrective action seven months later for having more than two absences in a four month period: in October, 2004, she worked a partial shift without requesting FMLA leave—which she was eligible and approved to take—and she missed work on three other days. (Pl.'s Dep. 41–45, 53–56.) Other employees who had more than two absences in a four month period did not receive corrective actions. (Newton's Dep. 51–53.)

On June 17, 2005, Plaintiff was approximately five minutes late in clocking in and returning to her work station after a lunch meeting. (Clemens's Dep. 68–69.) After the meeting, Plaintiff clocked out to go outside to her car. (Pl.'s Dep 69–70.) When Mr. Clemens noticed that Plaintiff had not immediately returned to her work station after the meeting, he looked for her outside and found her in her car. (Clemens's Dep. 70–71.) It is disputed what Plaintiff was doing

in her car. Defendant claims Plaintiff was smoking a cigarette. Plaintiff denies this and states that she was getting a clean change of clothes because she had soiled herself. (Pl.'s Dep. 69–70; Pl.'s Aff. ¶ 4.) On summary judgment, the Court must accept Plaintiff's version of the facts. In any case, Plaintiff did not notify anyone that she was claiming FMLA leave for the visit to her car. (Pl.'s Dep. 71–72; Clemens's Dep. 71.)

Plaintiff was not the only one who left early or returned late from the June 17 meeting. Other employees from the radiology department left early for the meeting or returned late from the meeting, but only Plaintiff received a corrective action. (Newton's Dep. 16–20.) Unlike Plaintiff, the other employees who went outside did not clock out to do so. (*Id.*; Pl.'s Aff. ¶ 7.) This is because Plaintiff was required to clock out whenever she left the building, but other employees were not required to do the same, nor were they monitored for absence from their work stations. (Pl.'s Aff. ¶ 7.)

In late June, 2005, just before Defendant terminated her employment, Plaintiff received a favorable performance review. (Ex. J. to Pl.'s Br.: Spectrum Health, Performance Management Process and Review (June 29, 2005).) Nothing in the review or its accompanying 30-40 minute interview with Mr. Clemens suggested that Plaintiff's June 17 tardy was a cause for concern. (*Id.*; Pl.'s Dep. 157–60.) On the contrary, Mr. Clemens congratulated Plaintiff on her eligibility for a future bonus. (*Id.* 161.) Yet Defendant later issued a corrective action for the tardy, and Defendant ultimately terminated Plaintiff for performance and conduct issues. (Ex. 7 to Def.'s Br.: Spectrum Health, Corrective Action (July 7, 2005); Clemens's Dep. 77, 87–88.) Defendant employed Plaintiff on a "cause" basis, where cause for termination was defined to include unsatisfactory job performance as determined by Spectrum in its discretion. (Ex. 8 to Def.'s Br.: SPECTRUM HEALTH, EMPLOYMENT STATUS AND CLASSIFICATIONS 1 (2003).)

3

**ANALYSIS**

Plaintiff's complaint alleges that Defendant (1) discriminated against her in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213 (2000), and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MICH. COMP. LAWS §§ 37.1101–.1607 (LEXIS through 2007 legislation); (2) retaliated against her in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654 (2000); and (3) breached its employment contract with her by terminating her without sufficient cause. Defendant has moved for summary judgment under FED. R. CIV. P. 56.

Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (citing FED. R. CIV. P. 56(c)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But that does not mean that any amount of evidence, no matter how small, will save a nonmoving party from losing on a motion for summary judgment. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). When the nonmoving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

I.  **ADA and PWDCRA Discrimination**

Plaintiff argues that Defendant discriminated against her because of her IBS. The ADA requires that employers not "discriminate against a qualified individual with a disability

because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2000). Similarly, the PWDCRA provides that an employer shall not "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position." MICH. COMP. LAWS § 37.1202 (LEXIS through 2007 legislation). On summary judgment, where there is no direct evidence of discrimination,[1] courts employ a burden-shifting test to evaluate circumstantial evidence of retaliation.

Under the burden-shifting test a plaintiff bears the initial burden of producing evidence sufficient to support a prima facie case. To meet that burden under the ADA, a plaintiff must present evidence sufficient to support a finding on each of the following five elements: "(1) [s]he is disabled; (2) [s]he is otherwise qualified for the position with or without reasonable accommodation; (3) [s]he suffered an adverse employment decision; (4) h[er] employer knew or had reason to know of h[er] disability; and (5) h[er] position remained open." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 449 (6th Cir. 1999).

A plaintiff must establish a similar prima facie case under the PWDCRA. Like the ADA, the PWDCRA prohibits discrimination against disabled individuals because of their disability. "To prove a discrimination claim under the [PWDCRA], the plaintiff must show (1) that [s]he is

---

[1] It is possible that Mr. Clemens's statements joking about and questioning the seriousness of Plaintiff's IBS constitute direct evidence of discrimination. But Sixth Circuit precedent is murky on the issue of what constitutes direct evidence in circumstances such as these, *see Blair v. Henry Filters, Inc.*, 505 F.3d 517, 525–26 (6th Cir. 2007) (discussing the "tension" in Sixth Circuit caselaw addressing the issue). The statements can in any case be considered as circumstantial evidence in the burden-shifting analysis. *See id.* (considering potentially direct evidence as circumstantial evidence in the burden-shifting analysis).

[disabled] as defined in the act, (2) that the [disability] is unrelated to h[er] ability to perform h[er] job duties, and (3) that [s]he has been discriminated against in one of the ways delineated in the statute." *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004) (first, third, and fourth alterations in original) (quoting *Chmielewski v. Xermac, Inc.*, 580 N.W.2d 817, 821 (Mich. 1998)).

If a plaintiff produces evidence sufficient to support each element of a prima facie case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004) (ADA); *Peden*, 680 N.W.2d at 864 (PWDCRA). If the employer meets that burden, then the burden shifts back to the plaintiff to produce evidence sufficient to support a finding that the employer's articulated reason was pretext for discriminatory action. *Brenneman*, 366 F.3d at 418; *Peden*, 680 N.W.2d at 864. Unless the plaintiff carries this burden, the employer is entitled to summary judgment.

Defendant argues in its motion for judgment that Plaintiff cannot establish the first element of the prima facie case because Plaintiff's IBS is not a "disability" within the meaning of the ADA or PWDCRA. Defendant further argues that even if Plaintiff can establish a prima facie case, Plaintiff has failed to produce sufficient evidence to support a finding that Defendant's reason for discharging Plaintiff is pretext for discrimination.

### *Disability*

To be a disability under the ADA, Plaintiff's IBS must be an "impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(g)(1) (2007). The PWDCRA similarly defines disability at MICH. COMP. LAWS § 37.1103(d)(i)(A) (LEXIS through

2007 legislation), and protects persons from discrimination "based on physical or mental disabilities that substantially limit a major life activity of the disabled individual."[2] *Peden*, 680 N.W.2d at 863.

A person who presents evidence that she needs to be free to go to the bathroom whenever she feels the urge presents sufficient evidence to permit a reasonable jury to find in her favor on the issue of whether she has an actual disability under the ADA. *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999). This is because a jury can decide that controlling one's bowels is a major life activity and a plaintiff who needs to be free to go to the bathroom whenever she feels the urge is "significantly restricted as to the condition, manner or duration under which" she can perform that major life activity "as compared to . . . the average person in the general population." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Because of the near identity of the definitions in the ADA and the PWDCRA, because Michigan courts often decide ADA and PWDCRA claims in parity, and because the Court is not aware of any authority that would compel a contrary result, the same reasoning applies to Plaintiff's PWDCRA claim.[3]

Plaintiff survives summary judgment on this issue because she has presented evidence that she needs to be able to go to the bathroom whenever she feels the urge. She has frequent and sometimes uncontrollable bowel movements that require her to be close to a bathroom

---

[2] "[L]ike the ADA, the PWDCRA generally protects only against discrimination based on physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job." *Peden v. City of Detroit*, 680 N.W.2d 857, 863 (Mich. 2004).

[3] The Court is mindful of the Michigan Supreme Court's caveat that "the PWDCRA analysis will [not] invariably parallel that of the ADA." *Id.* at 870. The Michigan Supreme Court goes on to explain, however, that any difference between the acts will usually result from the PWDCRA being broader than the ADA, and thus "[i]n cases filed under both the ADA and the PWDCRA against employers subject to both acts, if an employer is found to have violated the ADA, rarely will it make any practical difference whether the employer has also violated the PWDCRA." *Id.* at 870 n.22. Moreover, the Michigan Supreme Court went on to look to the ADA for guidance in interpreting the PWDCRA "because the PWDCRA and the ADA are similar in purpose, and generally require similar proofs." *Id.* at 870.

so that she can make it there quickly whenever necessary. And in her deposition testimony she specifically states that she needs to be able to go to the bathroom whenever she feels the urge. Thus, under the holding in *Workman*, a jury could find that Plaintiff's IBS substantially limits a major life activity and therefore fits within the ADA's definition of disability. And because of the similarity of the protections afforded by the ADA and the PWDCRA, Plaintiff's IBS would also be a disability under the PWDCRA.

The cases relied on by Defendant in support of its argument that Plaintiff's IBS is not a disability are all distinguishable from this case. Defendant cites to cases that do not deal with IBS and hold that the inability to lift heavy objects and the need to be close to a bathroom are not themselves sufficient to establish a disability under the ADA. *Mahon v. Crowell*, 295 F.3d 585 (6th Cir. 2002) (inability to lift heavy objects because of a back impairment); *Bryson v. Regis Corp.*, 498 F.3d 561 (6th Cir. 2007) (inability to stand for fifteen to twenty minutes at a time); *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867 (2d Cir. 1998) (colitis); *Sacay v. Research Found. of City Univ. of N.Y.*, 193 F. Supp. 2d 611 (E.D.N.Y. 2002) (needing to be near a bathroom because of colitis). Plaintiff's evidence here goes beyond the evidence in these cases and indicates that her IBS requires her to be able to go to the bathroom whenever she feels the urge. That was enough to support a jury verdict for the plaintiff in *Workman*. Accordingly, it is enough for Plaintiff to survive Defendant's motion for summary judgment here.

Defendant does not cite any case—from any court, state or federal—holding that IBS is not a disability or that people with IBS who need to go to the bathroom whenever they have the urge are not disabled. And Defendant's attempt to distinguish this case from *Workman*, the only Sixth Circuit case of which this Court is aware that directly addresses the issue of whether a jury could find IBS to be a disability as defined by the ADA, is unavailing. Defendant argues that this

8

case is distinguishable from *Workman* because the plaintiff in *Workman* had a form of IBS that is more severe than the form of IBS that Plaintiff has. That may or may not be true, but it is not material. The Sixth Circuit did not rest its holding on the severity of the plaintiff's IBS. Instead, the Sixth Circuit rested its holding on the practical limitations restricting the plaintiff and found that the plaintiff's condition fit within the ADA's definition of disability if the jury accepted the evidence that her IBS required her to be free to go to the bathroom whenever she felt the urge. *Workman*, 165 F.3d at 467 ("Regarding [the issue of whether plaintiff's IBS is a disability], the jury could have decided that controlling one's bowels is a major life activity and that Workman's condition sometimes left her 'significantly restricted as to the condition, manner or duration under which [she could] perform a particular major life activity as compared to . . . the average person in the general population' . . . if they chose to credit evidence that she needed to be free to go to the bathroom whenever she felt the urge . . . ." (first and fourth alterations added)). On this record, a reasonable fact finder could find that Plaintiff suffers from the same practical limitation as the plaintiff in *Workman*. Plaintiff, like the plaintiff in *Workman*, has IBS and has presented evidence that she needs to be free to go to the bathroom whenever she feels the urge. Thus, applying the holding in *Workman*, the evidence of the practical limitations tied to Plaintiff's IBS is sufficient to permit a jury finding for Plaintiff on the first element of her prima facie case under the ADA and PWDCRA.[4]

### *Pretext*

Defendant argues that it is entitled to summary judgment in any event because Plaintiff cannot carry her burden under the third step of the burden-shifting analysis. Defendant presents a legitimate, non-discriminatory reason for terminating Plaintiff and argues that Plaintiff

---

[4] Defendant's motion papers do not contest the other elements of the prima facie cases under the ADA or the PWDCRA.

fails to present sufficient evidence to establish that its reason is merely pretext. In particular, Defendant claims that it terminated Plaintiff because of performance issues. Plaintiff had been caught asleep at work, had missed work or been late a number of times, and was five minutes late returning from a staff meeting and was smoking on hospital property (although Plaintiff denies this). To rebut that legitimate, non-discriminatory explanation, Plaintiff must show that it is pretext for discrimination. She can show pretext by showing "either (1) that the proffered reason[] had no basis in fact, (2) that the proffered reason[] did not actually motivate [her] discharge, or (3) that [it was] insufficient to motivate discharge." *Gray v. Toshiba America Consumer Prods., Inc.*, 263 F.3d 599, 600–02 (6th Cir. 2002). A plaintiff often shows insufficient motive by demonstrating that the plaintiff was treated differently than other similarly situated employees. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

Plaintiff points to evidence in the record on which a reasonable juror could rely to find that Defendant's proffered reason was insufficient to motivate Plaintiff's discharge. There is evidence suggesting that Plaintiff's supervisor held personal animus towards her related to her IBS. The record includes evidence that he made comments suggesting that he did not take her disability seriously and that he believed her IBS to be exaggerated or falsified.[5] There is also evidence that Plaintiff was disciplined for conduct that other employees engaged in with impunity. For example, there is deposition testimony that other employees were allowed to miss more than two days in a four month period without being disciplined; other employees were not required to clock out to go

---

[5] He joked that when Plaintiff was absent or tardy she was probably "at home on the commode," and he frequently remarked that her absences were more likely due to alcohol abuse than IBS. Defendant denies that the supervisor made these remarks, but on summary judgment the Court must credit Plaintiff's evidence on this point. Defendant also claims the time frame for these alleged remarks is not sufficiently tied to the date of Plaintiff's termination, but on summary judgment drawing all reasonable inferences in favor of Plaintiff as the non-moving party, the time frame is sufficiently connected.

outside to smoke and were, therefore, not disciplined for clocking in late; and even in circumstances where other employees were required to clock out (i.e., when they went to lunch), they were not always disciplined if they were late clocking back in. (Clemens's Dep. 68.). Moreover, Plaintiff received a favorable performance review only weeks before being issued a corrective action and ultimately being terminated. The review did not mention her tardy or the possibility that she would be terminated for inadequate job performance. In fact, just the opposite occurred: Plaintiff's supervisor later remarked that her job performance had made her eligible for a bonus. (Pl.'s Dep. at 161.) Yet Defendant now states that it terminated Plaintiff for performance issues that occurred before Plaintiff received her favorable performance review.

Defendant argues that Plaintiff cannot show pretext because there are no employees similarly situated to Plaintiff who were treated differently. It is true that it is necessary to compare employees who engaged in "substantially identical conduct," *Manzer*, 29 F.3d at 1084, but it is not true that there were no such employees in this case or that all such employees were treated the same as Plaintiff. Defendant may be correct that Plaintiff was the only one to clock in late after the meeting, but that argument loses its persuasiveness when one looks to the record and notes the testimony that other employees who attended the same meeting were not required to clock out to go outside to smoke. If the jury ultimately credits that testimony it could conclude that others were also late in returning from the meeting but that Plaintiff was the only one disciplined. Considering all of the evidence in the light most favorable to the Plaintiff, there is sufficient evidence in the record to support a reasonable juror's conclusion that Defendant treated Plaintiff differently than others because of her IBS and that Defendant's proffered reason for terminating Plaintiff was pretext for discrimination.

## II.     FMLA Retaliation

Plaintiff also claims that Defendant discharged her for exercising her rights under the FMLA. Plaintiff's complaint suggests that she is alleging FMLA entitlement or interference, but it is apparent from Plaintiff's Brief that Plaintiff is relying only on a theory of FMLA retaliation. As with an ADA discrimination claim, deciding a summary judgment motion on an FMLA retaliation claim involves a burden-shifting analysis. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). If a plaintiff can establish a prima facie case, then the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. *Id.* If the employer articulates such a reason, then the burden shifts back to the plaintiff to produce evidence that the reason was merely pretext. *Id.*

The prima facie case of retaliation under the FMLA has four elements: (1) plaintiff engaged in protected conduct; (2) the employer was aware that plaintiff engaged in protected conduct; (3) plaintiff suffered adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Akrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

Defendant does not contest the first three elements, but Defendant argues that Plaintiff has not presented sufficient evidence to support a finding on the fourth element of the prima facie case. To satisfy the fourth element and establish a causal connection between the protected activity and the adverse employment action, a plaintiff must present sufficient evidence to "raise [an] inference that her protected activity was *the* likely reason" for her discharge. *Sosby v. Miller Brewing Co.*, 211 F. App'x 382, 387 (6th Cir. 2006) (emphasis added) (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990).

Plaintiff fails to present evidence sufficient to raise an inference that her eligibility for FMLA leave was the likely reason for her discharge. Plaintiff generally alleges that she was treated differently than other employees, and she further alleges that she was retaliated against because she was eligible to take FMLA leave. But Plaintiff does not present evidence that a reasonable fact finder could use to support a causal connection between Plaintiff's eligibility for FMLA leave and her termination. Even though there is evidence in the record that a reasonable fact finder could use to conclude that Plaintiff was treated differently than other employees because of her IBS, there is nothing that shows she was treated differently because of her eligibility to take FMLA leave.

Nor has Plaintiff produced any evidence to raise an inference that her actual use of FMLA leave was the likely reason for her discharge. Plaintiff was eligible to use intermittent FMLA leave, but to take advantage of that leave she had to notify Defendant. An employee need not notify her employer using any specific means, but a plaintiff–employee bringing an FMLA-retaliation action must, at a minimum, show that her employer had sufficient information to determine that she was taking FMLA leave. *Cavin v. Honda of America Mfg.*, 346 F.3d 713, 721, 723 (6th Cir. 2003) (citing *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1208 (S.D. Cal. 1998), for the proposition that the FMLA does not specify the form of notice that is required, and holding that the question of whether an employee gave her employer adequate notice of her intent to take FMLA leave is a mixed question of fact and law that requires a court to determine whether "the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition").

In this case Plaintiff did not use FMLA leave for the tardy that led to her termination, and she did not use FMLA leave for every absence that caused her to receive a decision-making

13

leave in 2004. Plaintiff points to no evidence in the record that she gave notice—verbal or otherwise—to Defendant of her intent to use FMLA leave in those circumstances. In fact, the record does not indicate that Defendant had any information suggesting that Plaintiff was taking FMLA leave. The record shows only that Plaintiff was late or absent and now claims that she was late or absent because of her IBS. In short, the only conclusion supported by the record is that Plaintiff was eligible for FMLA leave but did not take advantage of it. Because Plaintiff did not use FMLA leave, she could not possibly have been terminated in retaliation for using FMLA leave. Thus there is no evidence in the record that a reasonable fact finder could use to conclude that Plaintiff's taking FMLA leave caused her to lose her job.

### III.     Wrongful Discharge

Plaintiff also alleges that her termination breached the employment contract between her and Defendant. Defendant argues that it is entitled to summary judgment because its termination of Plaintiff was appropriate under the governing policy.

Michigan courts have held that where an employer "ha[s] reserved for itself the authority to determine whether there was good and just cause," and where the employer "determined that there was good and just cause for terminating" the employee's employment, "terminating plaintiff's employment was not a breach of the employment contract." *Thomas v. John Deere Corp.*, 517 N.W.2d 265, 267 (Mich. Ct. App. 1994). The issue, then, is whether Defendant "reserved for itself the authority to determine whether there was good and just cause" to terminate Plaintiff.

Defendant's *Employment Status and Classification Policy* provides that nonmanagement employees, like Plaintiff, may be terminated if Defendant "has cause to do so." The policy defines "cause" to include "problems with performance or conduct." It goes on to clarify that "problems with performance include, *but are not limited to*, a pattern of unsatisfactory job

14

performance (as documented and determined by Spectrum *in its discretion*)." (emphasis added). The policy provides Spectrum the authority to determine, in its discretion, that there has been a pattern of unsatisfactory job performance. The policy further provides that the discretion to determine there has been a pattern of unsatisfactory job performance is only a subset of Spectrum's authority to determine if there has been a problem with performance. In other words, Spectrum not only has the authority to determine when there has been a pattern of unsatisfactory job performance but it also has the authority to identify, in its discretion, other problems with performance. Thus, Spectrum has reserved for itself the authority to determine whether there is cause to terminate an employee.

Plaintiff argues that Defendant's policy does not give it discretion to determine whether there is cause to terminate an employee. At a minimum, Plaintiff suggests, the contract language is ambiguous and therefore the issue should go to a jury. But the language is quite clear: the plain language of the policy unambiguously gives broad authority to Defendant and allows Defendant to make performance determinations in its discretion. Defendant reserved the authority to determine whether there is cause to terminate an employee, and it made such a determination in this case. Terminating Plaintiff's employment was not a breach of her employment contract with Defendant, and Defendant is, therefore, entitled to summary judgment on this issue.

## CONCLUSION

The factual record in this case, viewed in the light most favorable to Plaintiff and with all reasonable inferences drawn in her favor, does not permit a reasonable juror to find for Plaintiff on either her FMLA-retaliation claim or her breach-of-contract claim. However, there is sufficient evidence in the record to support a reasonable jury's verdict for Plaintiff under the ADA and PWDCRA. Accordingly, Defendant's motion for summary judgment is granted with respect

to Plaintiff's FMLA-retaliation and breach-of-contract claims and denied with respect to Plaintiff's ADA and PWDCRA claims.


Dated:    February 6, 2008                    /s/ Robert J. Jonker
                                                ROBERT J. JONKER
                                                UNITED STATES DISTRICT JUDGE